THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MILDRED PRIM, Appellant.

Fourth Department, April 23, 1975

410

*Nathaniel A. Barrell (Henrietta M. Wolfgang* of counsel), for appellant.

*Edward C. Cosgrove, District Attorney (William E. Baltha-sar* of counsel), for respondent.

GOLDMAN, J. This is a welfare fraud case in which the defendant after a jury trial has been convicted of both grand larceny in the second degree (Penal Law, § 155.35), a class D felony, and also a violation of section 145 of the Social Services Law, a class A misdemeanor. Defendant was sentenced on each count to one year of imprisonment in Erie County Correctional Facility, the sentences to run concurrently.

Factually, in August of 1962, defendant applied for public

assistance at the Department of Social Services (Department) and represented that she had no assets, income or resources to support her family consisting of her husband and 11 children. As of September of 1971, defendant was receiving public assistance in the amount of a $618 monthly allowance for the entire family, plus additional special allowances for heating. She was informed initially of the obligation to report to the agency any changes which might affect her eligibility for public assistance and particularly any change in income. The Department learned through an anonymous complaint in May of 1972 that defendant might be defrauding the Department as a result of failure to report income she received from a local organization known as Project Aware (Aware) which was connected with the Model Cities Agency of Buffalo. Investigation led to the disclosure that defendant had a contractual relationship with Aware, as a welfare consultant, which, in 1972, produced income for her of approximately $6,160. While she was a consultant to Aware, she also was chairman of a welfare rights advocacy organization known as BRAG (Buffalo Rights Action Group). As a welfare consultant for Aware, she, among other activities, advised clients as to welfare problems, gave lectures to staff personnel, developed social service plans and conducted seminars and workshops. Her entire defense rests on the claim that she was only a conduit for the funding of BRAG through Aware. This theory disappears before certain unrebutted proof submitted by the People that several checks were endorsed by the defendant to her son; that she could not give an accounting which would support her claim that she was acting only as a conduit although she was given the opportunity to produce one, and that the director of Aware represented to the FHA that defendant was an employee and had received income from Aware. As to the amount actually received, there is testimony that during the period covered by the indictment, from September 1, 1971 to December 15, 1972, her net income from Aware was $6,645.68 and at the same time she was receiving about $11,700 from the Department in monthly public assistance grants. The indictment charges that the sum of $5,763.62 was the actual amount fraudulently received or stolen during the 16-month period.

Defendant claims that there was reversible error in convicting and sentencing her for both grand larceny in the second degree and for a violation of section 145 of the Social Services Law. The latter section created a misdemeanor offense requir-

ing proof that the person obtained public assistance, that the person was not entitled to such assistance and that the means of obtaining such assistance was a fraudulent device, such as the deliberate concealment of a material fact *(People v Hunter,* 34 NY2d 432, 435). Section 155.35 of the Penal Law provides that one is guilty of stealing property who wrongfully obtained such property from the owner with the intent of depriving another of property or to appropriate the same to himself or to a third person. In the instant case, there is no question that the evidence demonstrates that defendant committed a series of acts with the culpable intent or design of appropriating public welfare funds to herself or to third persons. All elements of the conduct constituting a violation of section 145 of the Social Services Law and section 155.35 of the Penal Law are inherent to both crimes and the record establishes that defendant's acts constituted violations of both statutes. As a matter of law, these sections are mutually exclusive because the identical conduct which constitutes a violation of one also constitutes a violation of the other.

Section 145 of the Social Services Law provides that a person who violates that statute is guilty of a misdemeanor "unless such act constitutes a violation of a provision of the penal law of the state of New York, in which case he shall be punished in accordance with the penalties fixed by such law." Stated differently, when the same criminal conduct violates both the Penal Law and section 145 of the Social Services Law, there is no misdemeanor offense under the latter section and the Social Services Law violation becomes merged in the Penal Law violation.

There is an element in the instant case which was lacking in *People v Hunter* (34 NY2d 432, *supra)* where the Court of Appeals held that the evidence was insufficient to show that the specific value of the property wrongfully obtained in that public assistance case was in excess of $250. Accordingly, the evidence in that case did not establish larceny in the third degree and the conviction for that crime was held invalid while the misdemeanor conviction, pursuant to section 145 of the Social Services Law survived. Unlike that case, the record in the case at bar supports the conviction of grand larceny in the second degree. We have here precisely the situation contemplated by the Legislature when it provided that no misdemeanor offense under section 145 of the Social Services Law

survives where the defendant is convicted for the same conduct under a provision of the Penal Law.

Another issue on this appeal is whether the prosecution proved beyond a reasonable doubt that the defendant acted with the requisite felonious intent. Both parties agree that the conviction rests upon inferences to be drawn from the People's circumstantial evidence and that the issue is whether the hypothesis of guilt flows naturally from the facts proved, is consistent with the facts and whether they exclude to a moral certainty every reasonable hypothesis of innocence. *(People v Benzinger,* 36 NY2d 29; *People v Borrero,* 26 NY2d 430, 434–435.)* Defendant asserts the insufficiency of the People's circumstantial evidence. On an appeal from a conviction where the issue concerns the sufficiency of the evidence, we must view the facts most favorably to the People. *(Noto v United States,* 367 US 290, 296; *People v Benzinger, supra; People v Cleague,* 22 NY2d 363, 366.)

Jurors must use knowledge and insight based upon their ordinary human experience and, as reasonable men and women accept or reject the inferences which are claimed to be in accord with common human experience. With this principle in mind, considering the unrebutted proof in the record, a finding of guilt is consonant with the reasonable inferences to be drawn from the proof presented by the People. The conviction may not be reversed on the ground that the requisite criminal intent was not established.

At the beginning of the trial on April 25, 1974, defendant challenged the entire panel of prospective jurors on the ground that she had been deprived of her right to a trial by an impartial jury (U.S. Const., 6th Amdt.). Defendant argued that the selection process of panels in Erie County resulted in a deprivation of her constitutional rights because there was a systematic and intentional exclusion from the jury panel of students, blacks, women, the poor and young people; that the statutory disqualification of a juror based upon prior conviction of a crime involving moral turpitude was invalid because the criterion of moral turpitude involves too vague and indefinite a standard; that the women's exemption from jury duty service under section 665 of the Judiciary Law was unconstitutional. Defense counsel informed the court that there was a similar motion pending in the Federal District Court for the Western District of New York. In response, the court asked the Assistant District Attorney whether he had anything to

say in this respect. The Assistant District Attorney answered "no, your Honor. Of course, I would object to it". The trial court then reserved decision to await the Federal decision. Apparently the Federal court proceeding was abandoned before sentence was pronounced in the instant case. At the end of the trial testimony, the court denied the motion. It is defendant's contention that there was reversible error in failing to order a hearing on the factual allegations upon which her motion was based.

Before considering this matter of the challenge to the jury panel, a reference is appropriate to a very recent landmark decision of the United States Supreme Court, to wit, *Taylor v Louisiana* (419 US 522), in which the court decided that the selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial. The court expressly accepted the fair cross section requirement as fundamental to the jury trial guaranteed by the Sixth Amendment. In effect, the court said it was holding that the exclusion of women from the jury venire deprives a criminal defendant of his Sixth Amendment right to trial by an impartial jury drawn from a fair cross section of the community. The court also emphasized that in holding that petit juries must be drawn from a source fairly representative of the community, it imposed no requirement that petit juries actually chosen must mirror the community in respect of various distinctive groups of the population. This particular view is in accord with our Court of Appeals decisions in *People v Horton* (18 NY2d 355, 360) and *People v Agron* (10 NY2d 130, 140–141) where it was determined that a showing of imbalance in respect of a particular race on one particular jury panel does not, without more, demonstrate a denial of a particular defendant's right to equal protection. In view of the holding in *Taylor* women as a class may no longer be excluded from jury service or be given automatic exemption based solely on sex if the consequences are that the criminal jury venire is almost all male. We note that in response to the *Taylor* decision the New York State Legislature in February, 1975 passed and the Governor signed an act amending the Judiciary Law and repealing the exemptions for women contained in subdivision 7 of section 599, subdivision 7 of section 665 and subdivision 7 of section 507, which act became effective immediately (L 1975, ch 4).

The People's argument that the court properly denied defendant's challenge to the jury panel because the motion was orally made on the record rather than in writing may be technically proper but is certainly weak and unimpressive. The People rely on CPL 270.10 (subd 2) which provides that a motion challenging the jury panel be in writing and timely. There is a paucity of decisional law on the point. In the two reported cases dealing with this subject the decisions were somewhat inconclusive, although the comment in one was that the failure of a written motion posed a difficulty, but actually the "difficulty" did not preclude consideration of the merits of the motion *(People v Petrea,* 30 Hun 98, affd 92 NY 128). In the other case, it was held that the People did not object to the oral motion and at any rate the motion was written in the record *(People v Wilber,* 61 Hun 620, opn in 15 NYS 435, 436). Although the motion was not in writing it was made in open court and the record contains fully and with specificity the grounds for the motion and the arguments made in respect of it. Absent a showing of prejudice to the People, the lack of a writing in and of itself should not preclude review of the issue on the merits. As for timeliness, there is no merit to that point because the challenge was made before the selection of the jury, as required by CPL 270.10 (subd. 2).

The People take the position that the failure of the defendant to request specifically a factual hearing is fatal. This argument is meritless in view of CPL 270.10 which provides that if the motion challenging the panel of the jury is denied, then the issues of facts and law arising out of the challenge must be *tried* by the court. Of course, the movant must demonstrate facts constituting the basis of the challenge but that requirement has been satisfied in the instant case. In such circumstances, a court commits prejudicial error when it summarily overrules without a hearing defendant's challenge to the jury panel.

It may be noted that in *People v Attica Bros.* (79 Misc 2d 492, decided on June 27, 1974) it was determined by the Erie County Supreme Court, after a hearing on defendant's challenge to an entire jury list, that the Commissioner of Jurors must use a separate pool of jurors who qualified since January 1, 1974 after which time the discriminatory practices concerning students and women were discontinued. In effect that case determined that the practice of excluding women was unlaw-

fully discriminatory but that the entire jury pool need not be found disqualified because the discriminatory practice had ceased as of January 1, 1974. We do not reach the merits of the challenge of the panel on this appeal. We hold only that a hearing is necessary.

A final point raised by the defense is that the trial court erred in denying the discovery of interoffice memoranda of the Department. Defendant argues that her request for certain interoffice memoranda falls within the doctrine of *Brady v Maryland* (373 US 83), and also within the reach of CPL 240.20 involving pretrial discovery in criminal cases. *Brady* stated (p. 87) that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." (See, also, *Moore v Illinois*, 408 US 786, 794.) Through CPL 240.20, the matter of pretrial discovery in criminal cases is left to the discretion of the Trial Judge except in certain areas which are not pertinent to the case at bar.

We recognize that there is the policy as enumerated in section 136 of the Social Services Law of the need for confidentiality in respect of public assistance records so that welfare recipients will not be exposed to exploitation or embarrassment. On the other hand, if a welfare recipient desires to waive the protection of confidentiality in order to secure the benefit of effective cross-examination, that recipient, if a defendant in a criminal case, is entitled to the right of confrontation pursuant to the Sixth Amendment as well as his due process and equal protection rights under the Fourteenth Amendment. In order to realize that right, he is entitled to discovery of interoffice memoranda which are relevant to an issue in such a criminal case. For example, in the instant case defendant raises the question as to whether the Department in effect condoned the practices of the defendant which arose out of her relationship with Aware. Defendant argues that she could not have concealed that of which the Department was well aware. CPL 240.20 (subd 3) permits pretrial discovery in the discretion of the trial court as to matters designated by the defendant which are in the possession or control of the prosecution and which are shown to be material to the preparation of the defense and also which are based upon a reasonable request. The position of defendant is well taken that

there was an abuse of discretion in not allowing the requested pretrial discovery.

Defendant objects to the Judge's charge to the jury on the question of the presumption of intent to conceal a material fact contained in section 145 of the Social Services Law and also contends that it was error for the court to refuse defendant's request to charge specific intent. There is no substance to this argument for the charge considered as a whole is eminently fair and correctly states the law.

The refusal of the trial court to conduct the requested hearing on defendant's challenge to the venire and its error in not permitting discovery of the requested documents make a new trial necessary. At such trial the court should note the merger of the charged violation of section 145 of the Social Services Law into the charge of grand larceny in the second degree count. Defendant cannot be found guilty and sentenced on both of these counts. In view of our determination we do not reach the question of the claimed excessiveness of sentence.

The judgment of conviction should be reversed and a new trial granted.

MOULE, J. (concurring). We concur with the majority except as to the determination concerning discovery.

Prior to commencement of the trial defendant moved for discovery under CPL 240.20 (subd 2) of certain interoffice memoranda maintained by the Department of Social Services which, she claimed, might reveal that the Department knew of her activities with Project Aware and condoned them.

The scope of permissible discovery in a criminal case is clearly delineated in the Criminal Procedure Law but the extent to which it is granted in a particular situation is largely a matter of discretion with the trial court (CPL 240.20). In this instance extensive discovery was granted to defendant, including various departmental documents, canceled checks and records containing compilation of amounts of money which the defendant may have been entitled to receive.

Discovery is not meant to be used as a vehicle for an unlimited exploration to find evidence which may be useful to the moving party. The person seeking discovery has the burden of convincing the court not only that the matter sought to be discovered would be material but also that the request is reasonable. It is here that the trial court's discre-

tion is exercised and, absent a clear abuse, appellate courts should not interfere with that discretion *(Matter of Murray v City of New York,* 30 NY2d 113; *Cornwell v Safeco Ins. Co. of Amer.,* 42 AD2d 127).

In view of the broad discovery granted to defendant we think that the court drew a reasonable limitation in refusing to permit further probing. Even if the records of the Social Services Department showed that defendant was being paid by Project Aware in addition to receiving welfare assistance, it was defendant's claim that this money was being paid to her for third persons and not for herself. The larceny conviction is based upon defendant having retained such funds and having concealed her financial condition from the welfare authorities. The records of the Social Services Department may have shown payments to her by Project Aware but the Department may have assumed that she paid out the money to others as she claimed. We do not believe that an examination of the Department's records by defendant would have established that it had knowledge that she did not pay out such funds but kept them. It is this fact which justified her conviction of larceny. Furthermore, although not within the knowledge of the trial court at the time it acted upon defendant's motion, the evidence developed at the trial shows that it was an investigation by the Department itself, based upon an anonymous tip, that resulted in the charges being brought.

MARSH, P.J., and MAHONEY, J., concur with GOLDMAN, J.; MOULE, J., concurs in an opinion in which SIMONS, J., concurs.

Judgment reversed and a new trial granted.