In the Matter of the Application of RICHARD A. KNIGHT for a Certificate of Removal of the Trial of the Action entitled " PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* RICHARD A. KNIGHT, Defendant " to the Court of General Sessions.

Supreme Court, Special Term, New York County, July 17, 1942.

*Frank S. Hogan* [*Stanley H. Fuld* and *David Du Vivier* of counsel], for the People.

*David F. Price*, for the defendant.

HOFSTADTER, J. This is an application made pursuant to the provisions of paragraph (c) of subdivision 1 of section 31 of the New York City Criminal Courts Act for a certification by this court declaring it " reasonable " that certain charges against the petitioner be " prosecuted by indictment."

The petitioner has been charged, by two informations filed against him in the Court of Special Sessions, with violations of section 551 of the Penal Law, more specifically, with " sending letters with intent to cause annoyance," in violation of the said statute.

The district attorney does not put in issue the power of this court, in a proper case, to grant the relief prayed for. The opposition to the petition is based on the alleged failure of the petitioner to show any proper grounds justifying the issuance of a certificate under the terms of the statute.

The petitioner, on the other hand, does not claim that he is entitled to the certificate as of absolute right or that this court can as a matter of grace grant his petition. It is insisted, however, that special circumstances, presumed to be decisive in prior decisions of courts of coordinate jurisdiction with this one, afford ample grounds for the transfer of the pending prosecution against the defendant from Special Sessions to General Sessions for trial by court and jury,

The statute itself, section 31 of the New York City Criminal Courts Act, is entirely devoid of any criteria for the determination of the circumstances under which a court might consider a certificate should reasonably be issued. Neither do the cases dealing with applications of this character, of which there are a goodly number, establish any such criteria. The stuff for judgment must, therefore, be sought, not in the words of the statute, nor yet in the special circumstances of the various cases dealt with by courts of coordinate jurisdiction applying the statute, but only in the special circumstances to which the petition calls attention, and which form the basis of the petitioner's argument. It is in the analysis of these circumstances, to which the petitioner has called the attention of the court and upon which he has predicated his demand for relief, that a determination must be made.

In thus disposing of the decided cases as largely inapplicable to the issues before this court on this application, attention should be called to the juristic history of the Court of Special Sessions. As presently constituted, the court was reorganized by an amendment to the Inferior Criminal Courts Act adopted in 1910. A significant feature of the amendment is that under section 13 of the New York City Criminal Courts Act, no person is now eligible to act as a justice of the Court of Special Sessions " unless he shall have been admitted to practice as an attorney and counsellor at law of the supreme court of the state of New York at least ten years prior to the date of his appointment." By this amendment, the Legislature has assured that the justices of the Court of Special Sessions will be men of experience and training in law and capable of dealing with the serious problems that confront that important tribunal.

The situation prior to the amendment of 1910, when justices of the Court of Special Sessions were not required to be members of the bar, was, of course, wholly different. Indeed, we have the testimony of one court which recalled that in the old days the court of Special Sessions was comprised of three justices, one of whom was a lawyer, the other a butcher, and the third an undertaker. (*People* v. *Zinke*, 170 Misc. 332.) It was with respect to a court thus constituted that the decision in *People* v. *Rosenberg* (59 Misc. 342, [1908]), so much relied on by the petitioner and so frequently cited, was made.

In that case, the court set down certain categories or criteria as the bases for the determination of whether or not a certificate of transfer of a criminal prosecution from Special Sessions to General Sessions was reasonable. In a general way, these criteria were the same as those urged upon me by the petitioner, namely, that the case involved complicated questions of law and fact; that property

rights were to be determined; that the issues were far-reaching; and, finally, that for some reason a fair trial could not be obtained in Special Sessions. Except for the last reason, which presumably is still applicable, the other categories all fell with the reorganization of the Court of Special Sessions in 1910. Before justices appointed from among experienced members of the bar, there is no fear that a complicated question of law will get any lesser consideration than before a judge in General Sessions. Indeed, in so far as questions of law might be complicated, the consideration thereof by three justices must prove a benefit to a defendant rather than a detriment. Again, with respect to complicated questions of fact, our law is replete with instances of the recognition that a jury is hardly the tribunal for the determination of complicated questions of fact. It is an established principle in our civil courts that long and involved accounts should be referred to a referee and not submitted to a jury. (Civ. Prac. Act, § 466.) The confusion which might result in the minds of a jury from listening to a long and involved account or a complicated set of facts is thus recognized even in the civil courts. If, as the petitioner alleges, his defense to the pending prosecution involves the consideration of judicial proceedings in other courts and long, difficult and complicated questions of fact, it is obvious that his plight is not worsened by the submission of these facts to a competent body of trained jurists rather than to a lay jury.

Since 1910, there have been twenty-eight decisions which have passed upon applications of this character under paragraph (c) of subdivision 1 of section 31. Of these, eighteen* have denied the application and ten** have granted the application. In the main, the decisions have sought to apply the rule in *People v. Rosenberg (supra)* without realization that the circumstances thereof had changed and that the court was there dealing with a situation no longer existent. Where the court was made cognizant of these changed circumstances, as in *People v. Schulman* (175 Misc. 157),

---

* *People v. Petrulla*, 172 Misc. 853 (1939); *Matter of Ritter*, Id. 120 (1939); *People v. Carnovos*, 171 id. 390 (1939); *People v. Taffer*, 170 id. 688 (1939); *People v. Zinke*, Id. 332 (1939); *People v. Currao*, 166 id. 374 (1938); *People v. Sabourin*, Id. 23 (1938); *People v. Tumen*, 161 id. 645 (1937); *People v. Speiser*, 162 id. 9 (1936); *People v. Wittekind*, 161 id. 411 (1936); *People v. Katzowitz*, 150 id. 63 (1933); *People v. Horowitz*, 145 id. 860 (1932); *People v. Dunne*, 140 id. 379 (1931); *People v. Werner*, 139 id. 479 (1931); *app. dis.* 232 App. Div. 843; *People v. Gitter*, 133 Misc. 693 (1929); *People v. Porter*, 108 id. 100 (1919); *People v. Title Guaranty & Trust Co.*, 180 App Div. 648 (2d Dept., 1917); *revd.*, on other grounds, 227 N. Y. 366; *People v. Byrne*, 163 N. Y. Supp. 680 (1916).

** *People v. Schulman*, 175 Misc. 157 (1940); *People v. Kupferman*, 173 id. 691 (1940); *People v. Juskowitz* Id. 685 (1940); *People v. Figur*, 21 N Y. Supp. [2d] 571 (1940); *People v. Harrington*, 169 Misc. 461 (1938); *People v. McGuinness*, 168 id. 849 (1938); *People v. Bardecke*, 164 id. 323 (1937); *People v. Schumann*, 146 id. 395 (1933); *People v. Manupella*, 139 id. 722 (1931); *People v. Morganstern*, 134 id. 127 (1927).

an effort was made to establish a new criterion of judgment. It is clear, however, that the opinion in that case establishes no explicit principle of general application, and that in the end recourse must be had to the consideration of the special circumstances in each case.

We have seen that merely because complicated questions of law or fact may be involved in the pending criminal prosecution against this petitioner, that circumstance does not *now* afford any ground for the transfer of the cause to the Court of General Sessions. Nor does the fact that a problem of constitutional law will be raised at the trial affect the propriety of the proceeding by information. There is no reason why the Court of Special Sessions cannot determine questions of constitutional law as well as a judge of the Court of General Sessions. (*People* v. *Byrne*, 163 N. Y. Supp. 680.) All courts at *nisi prius*, whether the trials are with or without the aid of a jury, are guided by the principle that statutes should not be declared unconstitutional *by them* except in the most clear and convincing circumstances. In the instant case, the Appellate Division of this Department (*People* v. *O'Dell*, 257 App. Div. 933) has already upheld the constitutionality of section 551 of the Penal Law. The petitioner, however, argues that the decision in the *O'Dell* case does not necessarily involve a judicial finding that the statute as applied in this case will similarly be upheld as constitutional. Be that as it may, the case surely affords enough ground for the guidance of a *nisi prius* judge in avoiding determinations of nice questions of constitutional law.

The petitioner argues that he has a property right at stake, to wit, his license to practice law, and for that reason also the prosecution should be transferred to the Court of General Sessions. It is true that in some cases it has been held that a motion to transfer should be granted where a property right is involved, but it has not been held that the right to practice law is the kind of property right to which this rule should apply. On the contrary, the opposite has been expressly indicated in *People* v. *Speiser* (162 Misc. 9 [1936]).

The petitioner makes much of the argument that while he has been proceeded against for a violation of section 551 of the Penal Law in sending out annoying letters, the crime he should have been charged with is that of criminal libel, wherein he would have been guaranteed a trial by jury. (Code Crim. Proc., § 418.) Whether or not the acts complained of, and which form the subject-matter of the pending criminal prosecution against the petitioner, constitute a violation of section 551 of the Penal Law and are, therefore, within the competence of the Court of Special Sessions

or whether they constitute a violation of article 126 of the Penal Law, for which a trial by jury is guaranteed (State Const., art. I, § 8), is not before me. This application cannot be employed to test the jurisdiction of the Court of Special Sessions (*People* v. *Sabourin*, 166 Misc. 23 [1938]); nor to secure an interpretation of a particular statute. (*People* v. *Title Guaranty & Trust Co.*, 168 N. Y. Supp. 278, 282, 283; *revd.*, on other grounds, 227 N. Y. 366 [1917].) If there is any merit to the petitioner's argument that he is being proceeded against under the wrong section of the Penal Law, this is not the tribunal which is authorized, on this application, to pass upon that claim.

Finally, the petitioner urges that he cannot secure a fair trial before the Court at Special Sessions and, indeed, were there reasonable ground to assume that this claim were correct, the petition would be granted. On this aspect of the case, the application resembles very closely the usual petition for a change of venue.***

I do not find, in any of the circumstances delineated by the petitioner, any basis for assuming that a fair trial will not be accorded to him at Special Sessions. The mere fact that the Court at Special Sessions has been among those who received the alleged annoying letters which constitute the subject-matter of the information, is, of course, no basis for concluding that they would thereby be biased in coming to a determination on the merits of the petitioner's defense. " We must not be blind as judges to what we know as men." Most if not all of the judges in this county, whether at Special Sessions or General Sessions, must surely either have received these letters or have read them, or have heard discussions with reference to them. In a country which justly glorifies free speech and freedom of the press, many criminal prosecutions take place in the afterglow of pitiless publicity of much wider scope. Whatever may be the hazards of these conditions, it is too plain for argument that they have never heretofore been considered a basis for attributing bias to judges. The fact that the court exacted from the petitioner a promise that he would write " no more of these letters " does not indicate any

---

*** Change of venue is provided for in section 344 of the Code of Criminal Procedure, but under that section, the relief can only be given in connection with criminal actions " prosecuted by indictment." There is no provision in the Code for an application for change of venue with respect to criminal actions prosecuted by information. Nor is this a legislative oversight; for in 1939, the New York State Commission on the Administration of Justice, in its annual report, at page 327, specifically recommended the amendment of section 344 of the Code of Criminal Procedure so as to include the right of a defendant in a criminal action, prosecuted by information, to apply for a change of venue While section 344 of the Criminal Code was in some respects amended in 1941, this recommendation of the Commission was not adopted It must accordingly appear that the Legislature has indicated its intention not to permit applications for change of venue with respect to criminal actions prosecuted by information.

bias. The exaction was a condition precedent to a long adjournment and may be regarded as an incident in the administrative function of admitting to bail. Nor does the circumstance that the court advanced the date of trial to July, although it had previously been set for September, necessarily connote any prejudice under the circumstances set forth; for in the confusion arising in connection with statements of counsel, the court may have misapprehended the meaning of the representations made.

Nothing appears which casts doubt upon the integrity of the justices of the Court of Special Sessions before whom he may be tried. Nothing has been presented to indicate that any one of the justices of the Court of Special Sessions who did not feel entirely free in mind and conscience to sit impartially on the case, would not, in accordance with ancient and honorable judicial tradition, at once disqualify himself.

It is the mandate of the Legislature that the Court of Special Sessions shall have " exclusive jurisdiction to hear and determine. all charges of misdemeanor committed within the city of New York, except charges of libel." (N. Y. City Crim. Cts. Act, § 31.) For this court to exercise the drastic power of ordering jurisdiction thus conferred to be divested from the Court of Special Sessions and transferred to the Court of General Sessions, requires circumstances more potent and arguments more persuasive.

The application is, therefore, denied.