THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* JOHN G. BROADY and EDWARD JONES, Defendants.

Supreme Court, Special Term, New York County, May 27, 1949.

*Joseph G. Miller* for John G. Broady, defendant.
*Hyman I. Fischbach* for Edward Jones, defendant.

*Frank S. Hogan, District Attorney (Willys S. Newcomb, Vincent A. G. O'Connor* and *Paul A. Stone* of counsel), for plaintiff.

STEUER, J. On April 18, 1949, the grand jury handed down an indictment against these defendants charging them in seven counts with larceny and conspiracy to tap telephone wires illegally. Defendants have pleaded to the indictment. They now move, pursuant to subdivision 2 of section 344 of the Code of Criminal Procedure, for a change of venue on the ground that a fair and impartial trial cannot be had in this county.

To establish their claims defendants have submitted a large volume of newspaper clippings. While reference to the particular subject matter of indictment is not of unusual extent, there is a great deal on the general subject of wire tapping in connection with which the defendants are discussed. In addition there is a quantity of matter in which they are not referred to but which could conceivably reflect on them.

There is a considerable body of decisions beginning with *People* v. *Hyde* (149 App. Div. 131) and continuing unbroken to *People* v. *Sandgren* (190 Misc. 810) which enunciate the principle that newspaper comment even though extensive does not establish inability to get a fair trial. In addition section 749-aa of the Judiciary Law specifically provides as a qualification for a special juror the ability to discard any opinion formed by newspaper reading. Theoretically such a statute may appear a trifle cynical — it admits that such comment is detrimental to our ideal of a fair trial and that nothing is to be done to prevent the injection of this poison but provides that only those who are immune may act as triers of the facts. In practice it is otherwise. The continuous succession of notorious incidents, each exaggeratedly treated as a *cause célèbre* and frequently extended by a pathologic desire for publicity, in the end produces no impression. It is common experience in the most notorious cases to meet a succession of talesmen who have read nothing of the matter, and an even more frequent occurrence is it to encounter those who can recall nothing of what they have read.

Defendants lay stress on the nature of the newspaper articles — editorials and comment by officials and persons of repute on the subject of wire tapping. It is true that the generally expressed antipathy to wire tapping and the claimed association of the defendants with it cannot fail to have some effect on people's minds. But this is not curable by a change of venue. The prejudice is not confined to this county and while it has

been expressed in relation to this case it exists independently of such expression.

Lastly defendants point out that there has been much quotation of responsible public officials. They are correct. There is, however, little or anything (except as hereinafter noted) about the activities of this case or these defendants. The exceptions are comment by a magistrate on an application for bail and those of the District Attorney. As to the former there was language used somewhat more vehement than what might be desired, but if the entire report was read it was not prejudicial. In any event it shows no such feeling in the community as would warrant the relief asked for. More serious are the comments of the District Attorney. While not a judicial officer in a strict sense, it is only to be expected that his trusted position plus his exceptional opportunity for acquaintance with the facts entitle his utterances to great respect. Till the finding of the indictment such statements as were made were unexceptionable, consisting merely of what witnesses had testified before the grand jury and on one occasion a denial of knowledge of a certain charge. Upon the finding of the indictment a statement was issued which included besides a perfectly proper description of the nature of the charge, his opinion of the acts which led to the charges.

The propriety of these remarks is not in issue. Any acquaintance with the conduct of criminal investigations would lead to the conclusion that under the pressure and circumstances existing in this case the public utterances of the District Attorney were unusually restrained. Nor is it quite fair to evaluate these on the basis of what would be tolerated in other jurisdictions where any comment in advance of decision is considered reprehensible. No matter how desirable one may deem such an attitude, it does not prevail here and it cannot prevail as long as the press enjoys the latitude which it undoubtedly does. The conception of a fair trial is not an abstraction. It must be visualized against the background of our customs and institutions. Looked at in this way it cannot be said that what has been published will deprive the defendants of a fair trial.

Nothing in the foregoing is intended to countenance or encourage press conferences by prosecuting officers in connection with particular cases. This court has neither the power nor the desire to regulate the conduct of his office by any officer. But it is not to be inferred that a specific holding that a practice in one instance resulted in no harm is a general indorsement, or even that the practice is itself harmless.